*455 The opinion of the Court was delivered by
Wardlaw, Ch.
In ascertaining the subject of a testator’s disposition, the Court may inquire into the situation of his estate, and into every material fact which is auxiliary to the just interpretation of his words, for the purpose of identifying the thing intended by the words employed.
In the present case, if the codicil had never been executed, it would appear from the will and competent evidence, that the testatrix owned sixty-four slaves, of .which,' excluding the two improperly named, sixty are bequeathed. If the construction of the legacy to the plaintiff were to be made in this posture of affairs, it might be doubted whether the legacy of the two negroes in question would not be made up by applying it to Tom and Lydia, as well as by applying it to Harriet and Manza; and it might be dangerous to apply it to either by parol proof.
But if the codicil afterwards made, specifically disposing of Tom and Lydia, had been introduced originally as a clause of the will, the case would then be, that a testatrix, having sixty-four slaves, bequeaths sixty-two of them specifically and without ambiguity, and bequeaths two other slaves, but applies wrong names to them. In that condition of things, we should ascertain from the will and the evidence, that nothing was left upon which the legacy to the plaintiff in trust for Mrs. Haynsworth could operate, so as to give her the number of negroes expressly intended for her, unless we resorted to Harriet and Manza.
The bequest being of negroes, there is enough of certainty in that description to sustain the gift, notwithstanding the partial mis-description arising. from the misnomer. The legacy cannot be applied to horses or to any other thing than negroes; and it should be applied to negroes, if these be found.
A description false in part may be made sufficiently certain, by reference to extrinsic circumstances, to identify the subject intended ;.'as where a false description is superadded to one which by itself is correct and adequate. Thus, if a testator bequeath his black horse, having but one horse which was white; or devise his *456 freehold houses, having only leasehold houses; the white horse, in the one case, and the leasehold houses, in the other, clearly pass. The substance of the subject intended is certain, and if there be but one such substance, the superadded mis-description inapplicable to any subject, introduces no ambiguity. Any evidence is admissible which merely tends to explain and apply what the testator has written; and no evidence can be admitted which merely shows what he intended to write. The most accurate description of the subject of a gift in a written instrument requires identification by proof, of extrinsic circumstances ; and the least accurate description which satisfies the mind of the Court of the donor’s meaning, is within the same principle. If the judgment of the Court be founded upon a comparison of the terms of description employed in the written instrument with the extrinsic evidence of the identity of the subject, no attempt is made to vary a written instrument by parol evidence, nor to ascertain the intention of the donor independently of his written words. The Court does no more than to ascertain the application of the descriptive words in the instrument of gift. Wigram on Wills, pi. 9, 67, 70.
The sound doctrine on this subject is well stated in Swinburne on®Wills, 895, (part 7, § 5,) — “ The error of the testator in the •proper name of the thing bequeathed, doth not hurt the validity of the legacy, so that the body or substance of the thing bequeathed be certain: for example, the testator doth bequeath his horse Bucephalus, whereas the name of his horse” (testator having, as I understand, the example, but one horse,) “is Arundel; this error is not hurtful, but that the legatary may obtain the horse Arundel, if the testator’s meaning be certain : for names were devised to discern things : if therefore we have the thing it slrilleth not for the name. The error in the name appellative of the thing bequeathed doth destroy the legacy : for example, the testator intending to bequeath a horse doth bequeath an ox, or meaning to bequeath gold, doth bequeath apparel; in both these cases the legacy is void. The reason of this difference is because *457 a proper name is an accident attributed to some singular or individual thing, to distinguish the same from other singular things of the same kind whereas names appellative do respect the substance of things, and being common to every singular of the same kind make them to differ from things of other kind or substance.”
It is justly remarked by Judge RichARDSON, in the State vs. Scurry, 3 Rich. 68, that “the names of slaves are vague and vary like the names often applied to other chattels.”
The testatrix, in the case before us, had the right to change the names of her negroes at her will. That she exercised this right in relation to Harriet and Manza is plausibly argued from the fact that in the codicil, she bequeaths Tom and Lydia as £ two negroeá not named in her said will,’ and leaves the other negroes to pass by the names mentioned in the will. That she could not have intended such valuable property as slaves to pass under the residuary clause, may be inferred from the doubting manner in which she mentions the existence of any residue. She gives “the rest and residue of her estate, if there be any.”
If the testatrix had owned the two slaves Harriet and Manza and no more, and had bequeathed two slaves, mis-naming them, it could hardly be doubted that the legatee would take Harriet and Manza. Yet that would not differ from the present case in principle ; and should not differ in result.
Thus the construction would stand, if the codicil had formed a clause in the will originally.
But the execution of a codicil is a republication of a will; and both papers must generally be construed in pari materia, as if they formed but one instrument, uttered uno flater. A. testament, with all its codicils, represents the wishes of the testator concerning the disposition of his property after his death, and however numerous may be its parts, it is to be construed as one declaration of intention, uttered at the death of testator;
It is at this point, we dissent from the circuit decree. We do not assail the general doctrines of the decree concerning the admissibility of parol evidence to vary a written instrument; but we *458 suppose the Chancellor has overlooked the proposition that the will and codicil are to be construed as one, entire instrument.— His attention seems not to have been directed to this point on the circuit; even in the learned argument here, the point was barely suggested.
It may be objected that the will as it really stood originally, independent of the codicil, must, upon just reasoning,, mean the same thing after the codicil as it meant before: and if it could not have been construed to refer to Harriet and Manza at the date of its execution, its meaning could not be changed by matter subsequently arising. The objection is more specious than solid. It is competent for a testator, by subsequent testamentary disposition, to declare his intention in matters previously dubious; or to interpret a prior disposition where it is not dubious: or even to declare his meaning in opposition to the plain import of the terms previously employed. All his testamentary dispositions make one testament.
It is ordered and decreed that the circuit decree be reversed in the particular above mentioned; and it is declared and adjudged that the plaintiff is entitled to the slaves Harriet and Manza.— Defendant must account for the hire of these slaves, if any accrued. Costs to be paid from the estate of testatrix.
O’Neall, EvaNS, Wardlaw, Frost, Withers and WhitNer, JJ., and JohnstoN, ÜUNKIN and DarsaN, CC., concurred.

Decree reversed.